The STATE of Texas, Appellant,

v.

Brandon Duwane KELLEY, Appellee.

No. 06–99–00079–CR.

Court of Appeals of Texas,
Texarkana.

Argued March 14, 2000.

Decided April 5, 2000.

148

James Moss, Dist. and County Atty., Bonham, for appellant.

Pam Campbell, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice ROSS.

This is an appeal from the trial court's granting of a motion for new trial in favor of the defendant, Brandon Duwane Kelley. The State appeals, contending that (1) the trial court lacked jurisdiction to grant Kel-

ley's motion for new trial, and in the alternative, (2) the trial court abused its discretion in granting Kelley a new trial. After reviewing the record, we affirm.

## I. JURISDICTION

Kelley was charged by indictment for the offense of possession of a controlled substance with intent to deliver.[1] Kelley pled guilty and stipulated that he exhibited a deadly weapon in the commission of the charged offense. On March 30, 1999, a jury assessed the maximum punishment allowable, twenty years' confinement and a fine of $10,000.00.

Ten days later, on April 9, 1999, Kelley filed a pro se notice of appeal and requested that he have appellate counsel appointed. On April 28, 1999, Kelley's newly appointed counsel filed, *in the trial court*, a motion to withdraw the notice of appeal, and the trial court purportedly granted the motion. At this same time, in order to preserve the trial court's jurisdiction, Kelley filed a "blanket" motion for new trial asserting all permissible grounds for relief. After appellate counsel familiarized herself with the case, Kelley filed an affidavit in support of this "blanket" motion, narrowing his grounds for relief to the ineffective assistance of trial counsel and the improper impaneling of the jury.

On June 14, 1999, the trial court held a hearing on Kelley's motion for new trial. At the hearing, the State raised the issue of jurisdiction. The State contended that the trial court lost its jurisdiction to grant a new trial when Kelley filed his pro se notice of appeal. However, after hearing the evidence and the argument by counsel, the trial court found that it did have jurisdiction and entered an order vacating the plea of guilty, vacating the judgment and sentence, and granting a new trial. The State appealed.

---

1. Kelley was charged by separate indictment for the offense of delivery of a controlled substance. That case, No. 06–99–00080–CR, is also on appeal before this Court. The two cases were tried together in the trial court, and they present identical points for review on appeal before this Court.

In its first point of error, the State reasserts its contention that the trial court did not have jurisdiction to grant Kelley's motion for new trial. The State contends that the filing of the notice of appeal divested the trial court of all jurisdiction and conferred jurisdiction on the court of appeals. According to the State, Kelley could have reinstated the trial court's jurisdiction by properly filing, *in the court of appeals*, a motion to withdraw his notice of appeal, but Kelley's failure to do so deprived the trial court of jurisdiction.

Contrary to the State's contentions, the filing of a notice of appeal does not divest the trial court of its jurisdiction to act on an otherwise timely filed motion for new trial. *Ex parte Drewery*, 677 S.W.2d 533, 536 (Tex.Crim.App.1984), *overruled on other grounds, Awadelkariem v. State*, 974 S.W.2d 721 (Tex.Crim.App.1998); *see also Hall v. State*, 698 S.W.2d 150, 152 (Tex.Crim.App.1985). In *Ex parte Drewery*, the Texas Court of Criminal Appeals addressed this very issue and held that it is not the filing of the notice of appeal, but the filing of the appellate record in the court of appeals that divests the trial court of its jurisdiction to rule on a timely filed motion for new trial. *Id.* In reaching this conclusion, the court relied on Article 44.11 of the Texas Code of Criminal Procedure (current version at Tex.R.App. P. 25.2), which provides that the trial court's jurisdiction will be suspended on the filing of the appellate record in the court of appeals. *Id.* Although the *Drewery* case has recently been overruled on other grounds, we find that this basic premise still holds true. There has been no change in the case law or the statutes since *Drewery* that would suggest otherwise.

We acknowledge that the State is correct in pointing out that a motion to withdraw a notice of appeal should be filed in the *court of appeals*, not in the trial court as Kelley's was. *See* Tex.R.App. P. 42.2. However, under the circumstances of this case, it was not necessary for Kelley to withdraw his notice of appeal. As previously discussed, it is the filing of the appellate record, not the filing of the notice of appeal, that divests the trial court of its jurisdiction to rule on a timely motion for new trial. The proper withdrawal of a notice of appeal ensures that the appellate record is not filed in the court of appeals, thereby terminating the trial court's jurisdiction. In the present case, despite Kelley's failure to properly withdraw his notice of appeal, the appellate record was still not filed in the court of appeals at the time the trial court granted his motion for new trial. Therefore, we conclude that Kelley's filing of a notice of appeal and his subsequent failure to properly withdraw such notice did not deprive the trial court of jurisdiction to grant the motion for new trial. Point of error one is overruled.

## II. THE MOTION FOR NEW TRIAL

In its second point of error, the State contends that even if the trial court had jurisdiction to grant Kelley's motion for new trial, it abused its discretion in so doing.

The State is entitled to appeal a trial court's granting of a motion for new trial. Tex.Code Crim. Proc. Ann. art. 44.01(a)(3) (Vernon Supp.2000). However, it is well established that the granting or denying of a motion for new trial rests within the sound discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (1995). We will reverse only when the trial court's decision was clearly wrong and outside the zone of reasonable disagreement. *State v. Gonzalez*, 855 S.W.2d 692, 695 n. 4 (Tex.Crim.App.1993), *quoting Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim.App.1992). We will not substitute our judgment for that of the trial court, but will only decide whether the trial court's decision was arbitrary or unreasonable. *Lewis*, 911 S.W.2d at 7; *State v. Dixon*, 893 S.W.2d 286, 288 (Tex.App.-Texarkana 1995, no pet.). The ruling of the trial court is presumed to be correct, and the burden rests on the appellant to estab-

lish the contrary. *Lee v. State,* 167 Tex. Crim. 608, 322 S.W.2d 260, 262 (1958).

Kelley's motion for new trial was based on the grounds of ineffective assistance of trial counsel and improper impaneling of the jury. More specifically, the motion focused on the following three alleged errors: (1) the failure to get a ruling on a motion to dismiss for the violation of Kelley's right to a speedy trial; (2) the conflict of interest presented by the undisclosed familial relationship between Kelley's appointed trial counsel and an assistant prosecuting· attorney; and (3) the improper seating of a peremptorily challenged venireman on the jury panel and trial counsel's failure to object thereto. Although none of these alleged errors are listed in Rule 21 of the Texas Rules of Appellate Procedure as mandatory grounds for the granting of a new trial, any of these alleged errors *may* be permissible grounds for a new trial. *See* Tex.R.App. P. 21; *State v. Evans,* 843 S.W.2d 576 (Tex.Crim.App. 1992).

■ For more than 120 years, trial courts have had authority to grant a motion for new trial *in the interest of justice,* based on grounds that are not specifically enumerated in the procedural rules. *Gonzalez,* 855 S.W.2d at 694 (Baird, J., with three judges concurring and two judges concurring in the result), *citing Mullins v. State,* 37 Tex. 337, 339–40 (1872–73); *Dixon,* 893 S.W.2d at 288. Moreover, the Texas Court of Criminal Appeals has specifically determined that trial courts have authority to grant a motion for new trial for errors amounting to ineffective assistance of counsel. *See Reyes v. State,* 849 S.W.2d 812, 815 (Tex.Crim.App.1993). Because the trial court's order in the present case did not state on which grounds the relief was granted, we will uphold the order if it is correct on any legal theory applicable to the issues raised. *See State v. Gill,* 967 S.W.2d 540, 541 (Tex.App.-Austin 1998, pet. ref'd); *State v. Read,* 965 S.W.2d 74, 77 (Tex.App.-Austin 1998, no pet.).

■ To prove ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that (1) his counsel's representation was deficient, and (2) the deficient performance was so serious that it prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim.App.1986). To successfully attack a guilty plea for ineffective assistance of counsel, the defendant must show that counsel's alleged deficiencies caused his plea to be unknowing and involuntary. *Rodriguez v. State,* 899 S.W.2d 658, 666 (Tex.Crim.App.1995). This standard requires a defendant to show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex.Crim.App.1999); *Kober v. State,* 988 S.W.2d 230, 232 (Tex. Crim.App.1999).

■ In reviewing the trial court's granting of a motion for new trial based on ineffective assistance of counsel, we do not apply the aforementioned *Strickland* test in a *de novo* fashion. *Gill,* 967 S.W.2d at 542. Instead, we review the trial court's application of the *Strickland* test through the prism of the abuse of discretion standard. *Gill,* 967 S.W.2d at 542; *State v. Thomas,* 768 S.W.2d 335, 336 (Tex.App.-Houston [14th Dist.] 1989, no pet.); *Messer v. State,* 757 S.W.2d 820, 827 (Tex. App.-Houston [1st Dist.] 1988, pet. ref'd). As such, we will only determine whether a finding of ineffective assistance of counsel would have been clearly wrong and outside the zone of reasonable disagreement so as to amount to an abuse of discretion. *See Cantu,* 842 S.W.2d at 682.

**(A) The Right to a Speedy Trial**

■ In considering whether Kelley's trial counsel was ineffective for failing to get a ruling on the motion to dismiss for denial of a speedy trial, we must first

determine whether Kelley had a viable speedy trial claim. Federal constitutional speedy trial claims are to be analyzed on an ad hoc basis by weighing and then balancing the four *Barker* factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101, 116–17 (1972); *State v. Munoz,* 991 S.W.2d 818, 821 (Tex.Crim. App.1999). The length of the ·delay is a "triggering mechanism" for analysis of the other *Barker* factors. *Barker,* 407 U.S. at 530–32, 92 S.Ct. 2182; *Munoz,* 991 S.W.2d at 821. If the ·delay is not found to be presumptively prejudicial, then there is no need for inquiry into the other *Barker* factors that go into the balance. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182; *Munoz,* 991 S.W.2d at 821–22. Delays approaching one year are generally considered presumptively prejudicial. *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520, 528 n. 1 (1992); *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.1992).

In the present case, the parties stipulated to much of the evidence concerning the alleged violation of Kelley's right to a speedy trial. On October 30, 1997, Kelley was charged by indictment for the offense of possession of a controlled substance with intent to deliver. At that time, Kelley was already serving a three-year sentence in the penitentiary for a prior offense. His present case was first set to go to trial on March 16, 1998, and a bench warrant was issued to bring Kelley from the penitentiary to Fannin County for the trial. However, Kelley was not brought to trial as directed in the bench warrant because the Fannin County jail was overcrowded and/or the sheriff lacked the necessary funds for Kelley's transportation.

The prosecuting attorney had offered to recommend that Kelley receive a twelve-or thirteen-year sentence, with no deadly weapon finding, and with the sentence running concurrently with the one he was already serving. Kelley was anxious to accept this offer. On March 17, 1998, one day after the trial had been postponed, Kelley sent a letter to the trial court attempting to enter a plea of guilty so as to take advantage of the State's offer and expedite the process.

The case was then reset for trial on September 4, 1998, at which time Kelley was still prepared. to enter a plea of guilty in exchange for a sentence recommendation of twelve years. A bench warrant was issued; however, once again, Kelley was not brought to Fannin County for trial because of overcrowding in the jail and/or insufficient funds for transportation.

On December 18, 1998, with no trial date pending, Kelley filed a motion to dismiss the indictment for the violation of his constitutional right to a speedy trial. The motion to dismiss was set for hearing; however, before the date of the scheduled hearing, Kelley's counsel left private practice and withdrew from her representation of Kelley. The record does not reflect that the trial court ever made a ruling on Kelley's motion to dismiss.

On December 30, 1998, new counsel was appointed for Kelley. Although the case was set for trial for the third time on February 22, 1999, Kelley's new lawyer did not meet with his client to discuss the case until February 15 or 18, 1999. On the morning of the scheduled trial date, Kelley appeared. for trial on his own volition, because he had since been paroled for his prior conviction. At that time, Kelley was prepared to accept the twelve-year plea bargain which he believed had previously been offered, but the prosecuting attorney would only agree to a thirteen-year deal. Kelley informed the trial court that he did not feel that his new lawyer was prepared or competent to handle the case, and he sought leave to retain counsel. The trial court removed Kelley's latest appointed counsel and granted Kelley leave, ordering him to return with retained counsel at 1:00 or 1:30. After taking leave of the court, Kelley allegedly contacted an attorney and

received the impression that he would call the court and have the matter postponed. There is evidence that this attorney's office did in fact call the court to say that he would be representing Kelley.[2] However, neither this attorney nor Kelley appeared in court that afternoon. As a result, Kelley's bond was forfeited and he was again taken into custody.

The court reappointed Kelley's previous lawyer to represent him and set trial for the fourth time on March 28, 1999. Although Kelley was still willing to accept a twelve-year plea bargain, by this time the State had decided to withdraw its plea offer entirely. On the day of trial, Kelley's reappointed counsel filed a second motion to dismiss for denial of Kelley's right to a speedy trial, but failed to obtain a ruling on this motion.

In considering the first prong of the *Strickland* test for ineffective assistance, the trial court could have reasonably found that Kelley's counsel was deficient in failing to obtain a ruling on this motion. It would have been reasonable to conclude that Kelley had a viable speedy trial claim under the following analysis of the *Barker* factors: (1) the seventeen-month delay in

this case was presumptively prejudicial; (2) the delay was mostly attributable to the State; (3) Kelley timely and consistently asserted his right to a speedy trial; and (4) Kelley was prejudiced by the denial of a speedy trial when the State withdrew the previously offered plea bargain.

The record further reflects that defense counsel failed to preserve this viable claim for purposes of appeal. In order to preserve error for appellate review, the record must show that a complaint was made to the trial court and the trial court made a ruling thereon, either explicitly or implicitly. TEX.R.APP. P. 33.1. In the present case, the trial court never explicitly ruled on Kelley's motion to dismiss for denial of a speedy trial. Moreover, the record does not reflect that the motion was ever specifically brought to the trial court's attention, so we cannot say that the trial court's failure to dismiss the case was an implicit overruling of the motion.[3] Thus, Kelley's trial counsel failed to preserve his right to complain on appeal about a viable claim concerning his constitutional right to a speedy trial. This failure to preserve error cannot be attributed to a reasonable trial strategy,[4] and there-

2. Kelley's appointed counsel testified that the Fannin County court coordinator told him that the lawyer contacted by Kelley had called the clerk's office to say that he would be in court that afternoon to represent Kelley.

3. In some instances, a party need not get an express ruling on an objection, motion, or request to preserve error. Appellate courts will generally find that a trial court made an implicit ruling on an objection when the objection was brought to the trial court's attention and the trial court's subsequent action clearly addressed the complaint. *See, e.g., Rey v. State,* 897 S.W.2d 333, 336 (Tex.Crim. App.1995) (defendant's motion "implicitly overruled" when he twice requested the court to make a ruling and then stated that the court had denied his motion and neither the court nor the State corrected that statement); *Chappell v. State,* 850 S.W.2d 508, 510 (Tex. Crim.App.1993) (defendant's objection to jury shuffle overruled when trial judge granted State's motion to shuffle); *Ramirez v. State,* 815 S.W.2d 636, 650 (Tex.Crim.App.1991) (trial judge "implicitly overruled" defendant's

objection to the State's question by directing witness to answer question); *Beebe v. State,* 811 S.W.2d 604, 605 (Tex.Crim.App.1991) (when defendant requested additional time and trial court stated he would attempt to dispose of all pending cases if "humanly possible" in the morning, trial court's response was sufficient to preserve error). However, we will not find that the trial court made an implicit ruling on an objection where the record does not reflect that the objection was ever brought to the trial court's attention.

4. Kelley's appointed counsel provided an affidavit explaining the reasoning behind his conduct. He stated that he filed the motion to dismiss for denial of a speedy trial because he believed that this was Kelley's best ground for an appeal. Yet, he did not obtain a ruling on the motion, because he thought it to be unnecessary since the court was "granting" a speedy trial by proceeding to trial that morning. Also, he believed that the trial court had already ruled on a similar motion to dismiss that had been filed by Kelley's prior counsel.

fore trial counsel's performance could reasonably be considered deficient under the first prong of the *Strickland* test.

Further, in considering the second prong of the *Strickland* test, we conclude that the voluntariness of Kelley's plea can reasonably be doubted due to trial counsel's deficient representation. At the time he entered his guilty plea, Kelley stated that it was his understanding that he could pursue an appeal based on his speedy trial claim, despite his plea of guilty. In fact, Kelley could not have appealed based on his speedy trial claim because counsel failed to preserve this claim for appeal.[5] The courts have consistently held that when a defendant pleads guilty based on the false understanding that the merits of a pretrial motion will be preserved for appeal, defendant's plea is not knowing and voluntary.[6] *Harrelson v. State*, 692 S.W.2d 659 (Tex.Crim.App.1985); *Silva v. State*, 986 S.W.2d 29, 30 (Tex.App.-San Antonio 1998, no pet.); *Gonzales v. State*, 944 S.W.2d 22, 24 (Tex.App.-El Paso 1997, no pet.); *Gillum v. State*, 959 S.W.2d 642, 643 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). Therefore, based on the speedy trial issue alone, we conclude it was not an abuse of discretion for the trial court to conclude that Kelley was denied effective assistance of counsel.

**(B) CONFLICT OF INTEREST**

In the next alleged error in his motion for new trial, Kelley claimed that the undisclosed familial relationship between trial counsel and an assistant prosecutor created a conflict of interest that resulted in ineffective assistance of counsel. In order to prove ineffective assistance of counsel based on a conflict of interest, the defendant must show that (1) defense counsel was burdened by a conflict of interest, and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App.1997). An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *Monreal*, 947 S.W.2d at 564.

There is very limited evidence in the record on this issue. In his motion for new trial, Kelley asserted that his trial counsel was encumbered by an undisclosed conflict of interest. And, at the hearing on the motion, the parties stipulated that an assistant prosecuting attorney and Kelley's court-appointed trial counsel were related by blood as uncle and nephew. However, there is no evidence that Kelley's counsel was in a position where he was required to make a choice between advancing Kelley's interest in a fair trial or advancing other interests to Kelley's detriment. A *potential* conflict of interest may have existed, but we conclude from the limited evidence in the record that it would have been unreasonable for the trial court to find that Kelley's counsel was burdened by an *actual* conflict of interest. As such, it would

---

Such reasoning cannot be considered reasonable trial strategy.

**5.** At the time of trial, Kelley could not have appealed this error not only because counsel failed to obtain a ruling on the motion, but also because the law would not have allowed him to appeal a nonjurisdictional pretrial motion unless he had a plea bargain. The law has since changed, so that, if counsel had obtained a ruling, Kelley could have appealed the speedy trial motion despite the fact that he had no plea bargain. *See Young v. State*, 8 S.W.3d 656, 665–66 (Tex.Crim.App.2000).

**6.** In the cases cited above, the courts held that a defendant's plea was involuntary where he entered his plea based on the understanding that he could appeal a pretrial motion, and in fact he could not appeal the motion because of the recently overruled law that prohibited a defendant who pleads guilty, without the benefit of a plea bargain, from appealing any nonjurisdictional pretrial motions. We find these cases to be analogous to the present case. In the cited cases and in the present case, the defendants entered their pleas based on the understanding that they could appeal a pretrial motion that was not preserved for appeal.

have been an abuse of discretion for the trial court to grant a new trial for ineffective assistance of counsel based on an actual conflict.

 Even so, the trial court was not foreclosed from considering the undisclosed familial relationship between defense counsel and the assistant prosecutor. Although the existence of a *potential* conflict of interest is not a proper basis for a finding of ineffective assistance of counsel, the *appearance* of a *potential* conflict may be a proper factor for the trial court to consider when granting a new trial in the interest of justice.

### (C) Improper Impaneling of the Jury

 In the third and final alleged error in his motion for mistrial, Kelley claimed that the granting of a new trial was required because a peremptorily challenged venireman was improperly seated on the jury panel. This alleged error was addressed both in terms of ineffective assistance of counsel for counsel's failure to object and in terms of a separate ground for a new trial based on the error itself.

In his affidavit, Kelley's trial counsel acknowledged that he did not notice the seating of the stricken juror and therefore acknowledged that he had no reasonable trial strategy for failing to object. Thus, there can be no doubt that under the first prong of the *Strickland* test, trial counsel's performance was deficient in failing to object to the seating of the stricken juror. However, under the second prong of the *Strickland* test, it cannot be said that Kelley was prejudiced by this error. To prove prejudice under these circumstances, the defendant would need to show some evidence that the juror who was seated was otherwise disqualified. *See Fuller v. State*, 716 S.W.2d 721, 724–25 (Tex.App.-Corpus Christi 1986, pet. ref'd); *see generally Acosta v. State*, 522 S.W.2d 528 (Tex.Crim.App.1975). There is no such evidence in this case.

 Yet, we must again point out that the trial court was not foreclosed from considering the improper impaneling of the jury. Even though this error did not amount to ineffective assistance of counsel, it was a proper factor for the trial court to consider in granting a new trial in the interest of justice.

### (D) Conclusion

After reviewing the record, we conclude that the trial court could have reasonably granted a new trial based on ineffective assistance of counsel or in the interest of justice. The trial court could have reasonably found that Kelley was denied effective assistance of counsel due to counsel's failure to preserve Kelley's right to complain about the alleged violation of his right to a speedy trial. Further, the trial court could have reasonably found that a new trial was required in the interest of justice. The improper impaneling of the jury panel, coupled with the appearance of a potential conflict of interest, would further erode confidence in our system of justice. As such, it was reasonable for the trial court to find that the integrity and reliability of the verdict had been undermined by the errors in this case and that justice required a new trial. Therefore, we conclude that it was not an abuse of discretion for the trial court to grant Kelley's motion for new trial. Accordingly, we affirm the judgment of the trial court.